# IN THE COURT OF APPEALS OF IOWA

No. 21-0201
Filed April 14, 2021

IN THE INTEREST OF J.M.,
Minor Child,

H.R., Mother,
        Appellant.
_____

Appeal from the Iowa District Court for Polk County, Kimberly Ayotte, District Associate Judge.

A mother appeals the termination of her parental rights.  **AFFIRMED.**

R. Ben Stone of Parrish Kruidenier Dunn Gentry Brown Bergmann & Messamer, L.L.P., Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

ConGarry Williams of Juvenile Public Defender, Des Moines, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Doyle and Mullins, JJ.

**BOWER, Chief Judge.**

A mother appeals the termination of her parental rights to J.M., born in 2019, pursuant to Iowa Code section 232.116(1)(h) (2020).  She contends the court should have granted her an additional six months to reunite with the child, the child could be returned to her care with supervision, and termination of her rights is not in the child's best interests.  Because the child cannot be returned safely to the mother's care and termination is in the child's best interests, we affirm.

**I. Background Facts & Proceedings**

In the child's first six months of life, three child-welfare assessments were completed following allegations (1) the child's potential withdrawal from a prescription medication at birth, (2) the mother gave the infant a fruit snack causing the child to choke, and (3) the father left the child in the care of a person who was under the influence of methamphetamine.  The department of human services (DHS) opened a child-in-need-of-assistance (CINA) proceeding after the second incident and sought—but the court denied—the child's removal from the mother's care.

On November 21, 2019, after the third assessment, the juvenile court adjudicated the child as a CINA, removed the child from the parents' custody, and placed the child in the legal custody of DHS for purposes of foster care.

The mother and father are in an off-and-on abusive relationship, with many calls to the police reporting domestic violence by both.  Despite the father's multiple

incarcerations and other relationships, the mother continued to see and communicate with him throughout 2020.[1]

The mother has struggled with anger issues since the child's birth. She yelled at the nurses caring for newborn J.M. because of the child's crying and medical needs. The mother was reported by several people to "escalate quickly" and to yell at the child and adults around her. The Family Centered Services (FCS) provider noted the mother "has a pattern of being defiant and aggressive with FCS." Her behavior also led to problems finding and keeping housing, maintaining employment, and utilizing services. The mother did not undergo domestic-abuse counselling.

The mother attended most of her mental-health therapy sessions and made progress controlling her aggressive behaviors and learning self-care and child-care skills. However, in September 2020, the mother stopped attending child-parent psychotherapy appointments. In October, the FCS provider witnessed the mother speaking inappropriately to the child again. The mother would only occasionally follow through on suggestions from the FCS provider about caring for the child. A separate family specialist observed the same problems of inappropriate speech and failure to follow care recommendations.

The mother progressed to unsupervised overnights with the child in September 2020. In early October, the child fell and injured his head after jumping on the bed during a weekend visit, requiring an emergency room visit. The child suffered another head injury the next weekend but did not require a hospital visit.

---

[1] The father's visits, when he had them, were fully supervised. The father's rights were terminated under section 232.116(1)(b) and (e). He did not appeal.

Also in October, the mother allowed the father to attend at least one visit with the child without DHS supervision and had other unapproved persons in her home during the child's visits. As a result of these lapses of the case plan, the mother's visits were again required to be supervised.

The mother lost her housing in October for failing to follow community rules regarding employment, visitors, and cleanliness.

In November, after a year of little to no employment and days after the court ordered the State to begin termination proceedings, the mother started a job. She still held that job at the time of the January 21, 2021 termination hearing. In early January, she moved to her aunt's apartment in a small town, approximately one hour away from the child, where she continued to reside at the time of the hearing. The mother testified about her employment and housing at the termination hearing and also stated she now only speaks with the father about the child. She believed the child could be returned to her with continued DHS services and supervision. In the alternative, she asked that the court allow her an additional six months to reunite with the child.

The court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(h). She appeals.

**II. Standard of Review**

We review termination proceedings de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). "We give weight to the factual determinations of the juvenile court but we are not bound by them. Grounds for termination must be proven by clear and convincing evidence. Our primary concern is the best interests of the child." *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006) (citations omitted).

**III. Analysis**

The juvenile court concluded the State proved termination was appropriate under Iowa Code section 232.116(1)(h). Under that section, the court may terminate parental rights if

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(h). There is no question that the first three requirements have been met: the child is less than three years old, was adjudicated CINA in November 2019, and has been removed from the parent's physical custody since November 2019.

The only element the mother contests is the ability to return the child to her care. The mother participated in the services offered, but she had not progressed to the point of being able to care for the child without ongoing assistance. She still struggles with emotional control and consistent application of parenting skills. Despite fourteen months of services, at the time of the hearing she had been employed for only two months and in her current shared housing for three weeks. She also continues to maintain contact with and sometimes a relationship with the father, despite the toxic nature of their interactions. Under these facts, we conclude the child could not be returned safely to the mother's care at the time of the termination hearing.

The mother requested a six-month extension at the termination hearing. "The legislature has established a limited time frame for parents to demonstrate their ability to be parents. These deadlines stem in large part from mandates in federal law. Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency." *In re A.B.*, __ N.W.2d __, __, 2021 WL 935436, at *6 (Iowa 2021) (altered for readability) (citations omitted). To continue placement of a child for an additional six months, , the court must "enumerate specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b).

The limitation period for this child's removal was six months. The mother had more than twice that time period to show the necessary changes to reunite with the child. But she waited until termination was imminent to make any effort towards steady employment and housing. Given the mother's record of instability in these areas and her emotional control, we agree with the juvenile court's denial of the mother's request for an additional six months to work toward reunification.

In evaluating the best interests of the child, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *Id.* § 232.116(2). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *P.L.*, 778 N.W.2d at 41.

The mother is still working on her own physical, mental, and emotional condition and needs and has little stability in her life.  We acknowledge the mother loves the child, but she is unable to provide the safe and stable home the child needs and deserves.  A permanent and stable adoptive home with family members is waiting for the child.  Considering these factors, we conclude termination of the mother's parental rights is in the child's best interests.

**AFFIRMED.**